UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
--------------------------------- x
DWAYNE JONES,                      :
                                   :
                   Plaintiff,      :
                                   :
     -against-                     :    **MEMORANDUM AND ORDER**
                                   :
OMAYEMI GATLING and JOHN DOE,      :    15-cv-5892 (KAM)(SMG)
                                   :
                   Defendants.     :
--------------------------------- x
```

**MATSUMOTO, United States District Judge:**

Plaintiff Dwayne Jones ("plaintiff" or "Jones") brings
this suit against defendants City of New York, New York City
Police Officer Omayemi Gatling ("defendant" or "Officer
Gatling"), and John Doe (collectively, "defendants") for
violations of 42 U.S.C. § 1983 ("Section 1983"). (ECF No. 1,
Complaint ("Compl."), filed 10/13/2015.) Plaintiff dismissed
the City of New York on March 24, 2017. (ECF No. 34,
Stipulation and Order of Partial Dismissal ("Stip. of
Dismissal"), filed 3/24/2017; ECF No. 35, Stipulation and Order
of Partial Dismissal ("Stip. of Dismissal"), filed 3/24/2017.)
Pending before the court are the parties' cross-motions for
partial summary judgment. Plaintiff moves for summary judgment
on his denial of fair trial claim, but not his false arrest
claim. Defendant moves for summary judgment on plaintiff's
false arrest claim, but not plaintiff's denial of fair trial
claim. For the forgoing reasons, defendant's motion for summary

1

judgment is granted and plaintiff's motion for summary judgment
is denied.

**BACKGROUND**

## I.  Factual Background

Defendant arrested plaintiff on October 18, 2012.  The
parties agree on some basic facts regarding the arrest, but they
offer different versions of the facts leading up to, and
defendant's actions following, plaintiff's arrest.  Below, the
court sets forth each party's version of the facts and notes
which facts are disputed.

The following recitation of facts reflects defendant's
version of the events leading up to plaintiff's arrest and are
disputed unless otherwise noted.  According to defendant, at
some point prior to plaintiff's arrest, defendant's police unit
received information from a concerned citizen named "Jerry" that
a person matching plaintiff's description was driving a "dark-
colored van" from which marijuana was being sold and which
possibly contained a firearm.  (ECF No. 57-1, Joint Deposition
Appendix ("Jt. Dep. Append."), filed 6/12/2017, at 49-51, 53-
54.)[1]  On the day of and prior to plaintiff's arrest, defendant
received information that "Jerry" had communicated that the van
was in a parking lot in front of an Auto Zone "selling drugs."

---

[1] The court refers to the page numbers assigned by the Electronic Case Filing
("ECF") system.

2

(*Id.* at 55-56, 112-13.)  Defendant and Sergeant Mark Smith saw
plaintiff in or near a van matching "Jerry"'s description in a
parking lot in front of an Auto Zone, among other businesses,
near the intersection of Farragut Avenue and Ralph Avenue in
Brooklyn, New York (the "Auto Zone parking lot").  (*Id.* at 40-
49, 51, 53, 55, 57-58.)  After seeing plaintiff, defendant and
Sergeant Smith entered the Auto Zone parking lot and approached
the van.  (*Id.* at 57-59.)

By the time defendant approached the van, plaintiff
was observed in a nearby alley, which was "right across the
fence from where the van was parked."  (*Id.* 60; *see also id.* at
59-60, 63-64.)  Defendant observed "what appeared to [him] to be
some kind of illegal transaction on the other side of the
alley," specifically a drug sale.  (*Id.* at 77; *see also* ECF No.
50-1, Complaint Report ("Compl. Rep."), filed 6/12/2017, at 2;
ECF No. 50-2, Arrest Report ("Arrest Rep."), filed 6/12/2017, at
1; ECF No. 50-3, Defendant's Memo Book, filed 6/12/2017, at 2-3;
ECF No. 50-4, Complaint Room Screening Sheet ("Compl. Rm.
Screening Sheet"), filed 6/12/2017, at 1.)

While plaintiff was still in the alley, defendant
asked plaintiff to whom the van belonged, and plaintiff
responded that it belonged to his sister.[2]  (ECF No. 57-1, Jt.

---

[2] In his deposition, defendant testified that the van belonged to plaintiff's
sister.  (ECF No. 57-1, Jt. Dep. Append. at 68-69.)  In the arrest paperwork,
however, defendant noted that plaintiff both claimed and disclaimed ownership

3

Dep. Append. at 68-69.)  Defendant told plaintiff that the van

was parked "illegally" in the Auto Zone parking lot, which was

"only for customers," and had to be moved.  (*Id.* at 69.)

Plaintiff then left the alley and went into the Auto Zone.

(*Id.*)  He returned to the van and, after being told again that

he had to move the van and after restating that the van belonged

to his sister, plaintiff used keys to open the driver's side

door to the van.[3]  (*Id.* at 71-72.)  Upon the door opening,

defendant smelled the odor of marijuana coming from the van.

(*Id.* at 72; ECF No. 59, Letter Regarding Missing Exhibit,

Criminal Court Complaint ("Crim. Ct. Compl."), filed 6/16/2017,

at 3; ECF No. 50-4, Compl. Rm. Screening Sheet at 1.)

After plaintiff opened the van door[4], defendant

observed plaintiff walk close to Sergeant Smith, presumably to

enter the van, in a way that was "a little closer than

[defendant] was comfortable with" and that defendant felt did

not "respect[] the space . . . that [one] should give uniformed

officers . . . ."  (ECF No. 57-1, Jt. Dep. Append. at 73; *see*

*also id.* at 75-76.)  Defendant subsequently moved plaintiff to

the side and handcuffed him.  (*Id.* at 73, 76.)

---

of the van and noted that plaintiff's sister was the van's true owner. (ECF
No. 50-4, Compl. Rm. Screening Sheet at 1.)
[3] It is undisputed that defendant instructed plaintiff to move the van.  (ECF
No. 57-1, Jt. Dep. Append. at 19, 71-72.)
[4] The parties agree that plaintiff opened the driver's side door to the van.
(ECF No. 49, Defendant's Local Rule 56.1 Statement of Undisputed Facts ("Def.
56.1 Statement") ¶ 21; ECF No. 52, Plaintiff's Responsive Statement of Facts
("Pl. Responsive 56.1 Statement") ¶ 21.)

The following recitation of facts reflects plaintiff's version of the events leading up to plaintiff's arrest. According to plaintiff, on the morning of October 18, 2012, he was doing laundry at a laundromat that shared a parking lot with the above-described Auto Zone. (*Id.* at 5-6.) While plaintiff was in the laundromat, a few police officers came into the laundromat and told people to move their cars. (*Id.* at 11.) At some point thereafter, plaintiff left the laundromat and went into the parking lot because there was a crowd. (*Id.* at 12.) While plaintiff was in the parking lot, a person named Lucien asked plaintiff to get the keys for a black Chevy van in the parking lot from a man named Glen, to whom the van belonged. (*Id.* at 12, 14-16.) Glen was in a nearby house at the time, so plaintiff went to the house. To get there, plaintiff walked down a driveway or path behind a strip of homes. (*Id.* at 21-22.) At the time, there were some people on that path, but plaintiff did not speak to any of them. (*Id.* at 22-23.) Plaintiff knocked on the door of a house, said to Glen, "Police is in the parking lot. Lucien need the keys to move the car. The police want everybody to move the cars out of the parking lot," and Glen "casually" gave plaintiff the keys for the van. (*Id.* at 15-16, 23.)

When plaintiff went to give the keys to Lucien, Lucien was moving another car and asked plaintiff to move the van.

(*Id.* at 16.) Two police officers also instructed plaintiff to move the van. (*Id.* at 19-20.) Plaintiff informed the officers that the van did not belong to him, but also that he had the key and was going to move the van. (*Id.* at 20.) Plaintiff opened the driver's side door to the van, and defendant immediately handcuffed him. (*Id.* at 17, 21.) Plaintiff was brought to central booking and, after about twelve hours, was released on bail. (*Id.* at 25-26.)

The following facts are undisputed. On October 18, 2012, defendant arrested plaintiff in the Auto Zone parking lot, located on Ralph Avenue near Farragut Avenue in Brooklyn, New York. (*Id.* at 5, 35, 41-43; ECF No. 50-2, Arrest Rep. at 1, 3.) Defendant created paperwork in connection with the arrest (the "arrest paperwork"), including a complaint report and an arrest report, which he provided to the Kings County District Attorney ("KCDA"). (ECF No. 57-1, Jt. Dep. Append. at 104, 108; ECF No. 50-1, Compl. Rep.; ECF No. 50-2, Arrest Rep.) The arrest paperwork states that plaintiff was arrested for the sale of marijuana and the possession of marijuana and ecstasy. (ECF No. 50-1, Compl. Rep. at 1; ECF No. 50-2, Arrest Rep. at 1; ECF No. 59, Crim. Ct. Compl. at 3.) In that paperwork, defendant incorrectly stated that the arrest occurred at the intersection of Utica Avenue and Farragut Avenue, when it actually occurred at the intersection of Ralph Avenue and Farragut Avenue. (ECF

No. 50-1, Compl. Rep. at 1.)  Defendant also wrote that he saw
plaintiff "driving a 2002 chevy van . . . and observed [him]
exit the van and engage in a hand to hand transaction with
several unapp[rehended] others" as well as "exchange a quantity
of an unknown substance for sums of [United States currency]."
(ECF No. 50-4, Compl. Rm. Screening Sheet at 1.)

    At some point after plaintiff's arrest, the van was
searched and what appeared to be marijuana and candies thought
to contain ecstasy were recovered.  (ECF No. 57-1, Jt. Dep.
Append. at 79, 107.)  The substance believed to be marijuana was
in fact marijuana, but the candies did not contain ecstasy.
(*Id.* at 108; ECF No. 52, Pl. Responsive 56.1 Statement ¶¶ 26, 28;
ECF No. 50-5, Field Test Results, filed 6/12/17.)

    Plaintiff was charged with, *inter alia*, unlawful
possession of marijuana and criminal possession of marijuana in
the fifth degree.  (ECF No. 59, Crim. Ct. Compl. at 3.)
Plaintiff returned to court numerous times in 2013 and 2014 in
relation to the prosecution that stemmed from plaintiff's arrest
on October 18, 2012.  (ECF No. 57-1, Jt. Dep. Append. at 27; ECF
No. 43, Defendant's Response to Plaintiff's Statement of
Undisputed Facts ("Def. Responsive 56.1 Statement"), filed
6/12/2017, ¶ 19; ECF No. 40, Plaintiff's Statement 56.1
Statement of Facts ("Pl. 56.1 Statement"), filed 6/12/2017 ¶
19.)  Plaintiff accepted an adjournment in contemplation of

dismissal ("ACD"), and the prosecution was subsequently

dismissal on December 10, 2014. (ECF No. 41-6, Certificate of

Disposition, filed 6/12/2017, at 1.)[5]

          According to plaintiff, defendant admitted at his

deposition in this action that the allegations made in the

criminal complaint which defendant signed "are almost entirely

false." (ECF No. 52, Pl. Responsive 56.1 Statement ¶ 45.)

Plaintiff claims that defendant admitted, *inter alia*, that

plaintiff went into the Auto Zone unaccompanied and that when he

emerged he had keys in his possession and, because plaintiff had

the keys in his possession at that point, defendant believed

plaintiff had control over the van. (*Id.* ¶ 45(c), (i) (citing

ECF No. 57-1, Jt. Dep. Append. at 69-72, 115).) Moreover,

plaintiff claims that defendant admitted that he seized

plaintiff because he was "too close" to Sergeant Smith. (ECF

*Id.* ¶ 45(j) (citing ECF No. 57-1, Jt. Dep. Append. at 73-76).)

Defendant disputes these, among other, factual allegations. In

particular, he disputes admitting that plaintiff obtained the

van keys while in the Auto Zone, and he claims that he believed

_____

[5] The court takes judicial notice of the relevant filings from plaintiff's
state court criminal proceedings, including the certificate of disposition,
to establish "the fact of such litigation and related filings." *Kramer v.
Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Bentley v.
Dennison*, 852 F. Supp. 2d 379, 382 n.5 (S.D.N.Y. 2012) ("Judicial notice of
public records is appropriate . . . because the facts noticed are not subject
to reasonable dispute and are capable of being verified by sources whose
accuracy cannot be reasonably questioned."), *aff'd sub nom. Betances v.
Fischer*, 519 F. App'x 39 (2d Cir. 2013).

plaintiff had control over the van because plaintiff had keys that provided access to the van. (ECF No. 56, Def. Response to Addt'l 56.1 Statement ¶ 45(c), (i).) Moreover, defendant claims that he arrested plaintiff for possession of marijuana. (*Id.* ¶ 45(j).)

## II. **Procedural Background**

On October 13, 2015, plaintiff filed a complaint in this court (the "Complaint") naming as defendants the City of New York, John Doe[6], and Officer Gatling. (*See* ECF No. 1, Compl.) The Complaint alleges claims for false arrest, denial of a fair trial, and failure to supervise, as well as a request for damages and attorney's fees. (*Id.* at 10 & ¶¶ 24-42.) On March 24, 2017, plaintiff withdrew his claims against, and the action was dismissed with prejudice with respect to, the City of New York. (ECF No. 34, Stip. of Dismissal; ECF No. 35, Stip. of

---

[6] The court dismisses the claims against the unnamed "John Doe" defendant. Discovery is complete, but "plaintiff has failed to identify [the] unnamed defendant[], or to present any evidence demonstrating [the John Doe's] involvement" in the alleged misconduct. *Blake v. Race*, 487 F. Supp. 2d 187, 192 n.1 (E.D.N.Y. 2007) (dismissing claims against John Does who remained unidentified at the summary judgment stage). The parties' stipulation and order of partial dismissal dismissing the City of New York as a defendant stipulates that the parties' "action shall . . . continue with respect to plaintiff's . . . Causes of Action against the individual defendant, Omayemi Gatling," and makes no reference to the "John Doe" defendant. (*See* ECF No. 34, Stip. of Dismissal at 1; ECF No. 35, Stip. of Dismissal at 1.) Moreover, the parties' submissions regarding the present motions for summary judgment do not mention the "John Doe" defendant. Plaintiff also fails to indicate that he will be able to identify the unknown "John Doe" at some point in the future. *See Blake*, 487 F. Supp. 2d at 192 n.1. Accordingly, because "plaintiff ha[d] an opportunity to pursue discovery to identify the unknown defendant[]" but failed to do so, the court hereby dismisses the "John Doe" defendant. *Feliciano v. Cty. of Suffolk*, 419 F. Supp. 2d 302, 313 (E.D.N.Y. 2005); *see also Blake*, 487 F. Supp. 2d at 192 n.1.

Dismissal.)  The parties filed cross-motions for partial summary judgment, briefing for which was completed on June 12, 2017. (ECF Nos. 39-59.)  In plaintiff's notice of motion, he requested the court "[s]chedule an inquest on damages with respect to [plaintiff's] cause of action [for denial of right to fair trial] against [defendant]." (ECF No. 39, Plaintiff's Notice of Motion.)

## LEGAL STANDARD

Summary judgment is appropriate "only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).  The governing law in each case determines which facts are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). "[W]hen both parties move for summary judgment . . . each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party

whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citations omitted).

To defeat a motion for summary judgment, the non-movant must identify probative, admissible evidence on the record from which a reasonable factfinder could find in his or her favor. *Anderson*, 477 U.S. at 256–57. The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Summary judgment "therefore requires the nonmoving party to go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

**DISCUSSION**

## I.  Section 1983

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).  To maintain a Section 1983 claim, a plaintiff must allege two elements.  First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted).  Second, "the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id.; see also McCugan v. Aldana-Brnier*, 752 F.3d 224, 229 (2d Cir. 2014).  Where, as here, a plaintiff seeks monetary damages, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite" to

recovery. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010)

(citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).

## II. False Arrest

Defendant argues that, as a matter of law, he cannot

be liable for false arrest because he had probable cause to

arrest plaintiff or, in the alternative, he is entitled to

qualified immunity. For the reasons stated below, defendant's

motion for partial summary judgment is granted.

"A § 1983 claim for false arrest, resting on the

Fourth Amendment right of an individual to be free from

unreasonable seizures, including arrest without probable cause,

is substantially the same as a claim for false arrest under New

York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)

(internal citations omitted); *see also Jenkins v. City of New

York*, 478 F.3d 76, 88 (2d Cir. 2007). Under New York law, the

elements of a false arrest claim are: (1) defendant intended to

confine plaintiff; (2) plaintiff was conscious of the

confinement; (3) plaintiff did not consent to the confinement;

and (4) the confinement was not otherwise privileged. *Singer v.

Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

The existence of probable cause constitutes a

"complete defense" to a false arrest claim under Section 1983

and New York state law. *Alvarado v. City of New York*, 453 F.

App'x 56, 58 (2d Cir. 2011) (citing *Weyant*, 101 F.3d at 852).

"Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *McGuire v. City of New York*, 142 F. App'x 1, 1 (2d Cir. 2005) (citations and internal quotation marks omitted). When assessing whether probable cause existed, the reviewing court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (alteration in original) (internal quotation marks omitted) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)); *see also Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) ("[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.").

An officer is entitled to qualified immunity with respect to a false arrest claim if he had arguable probable cause for the arrest. *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (citation and internal quotation marks

omitted).  As with the probable cause inquiry, the court's
inquiry regarding arguable probable cause is confined to the
facts known to the arresting officer at the time of the arrest.
*Betts v. Shearman*, 751 F.3d 78, 82-83 (2d Cir. 2014); *Picott v.
Chatmon*, No. 12-cv-7202, 2017 WL 4155375, at *5 (S.D.N.Y. Sept.
18, 2017).  The Second Circuit has affirmed that " '[a]rguable'
probable cause should not be misunderstood to mean 'almost'
probable cause. . . .  If officers of reasonable competence
would have to agree that the information possessed by the
officer at the time of arrest did not add up to probable cause,
the fact that it came close does not immunize the officer."
*Jenkins*, 478 F.3d at 87.  Accordingly, an officer is entitled to
qualified immunity, as a matter of law, only "if the *undisputed
facts* and all permissible inferences favorable to the plaintiff
show . . . that officers of reasonable competence could disagree
on whether the probable cause test was met."  *McClellan v.
Smith*, 439 F.3d 137, 147-48 (2d Cir. 2006) (alteration and
emphasis in original) (citations and internal quotation marks
omitted).

Defendant argues that he had probable cause to arrest
Jones for possession of marijuana.  First, defendant argues that
there was probable cause due to the odor of marijuana emanating
from the van.  (ECF No. 48, Memorandum of Law in Support of
Defendants' Motion for Summary Judgment ("Def. Mem. for Summary

Judgment"), filed 6/12/2017, at 9-10.) Second, he argues that
he had probable cause to arrest Jones for possession of
marijuana based on the marijuana found in the van. (*Id.* at 9,
11-13.) Alternatively, defendant argues that even if there was
no probable cause, he is entitled to qualified immunity based on
the odor of marijuana emanating from the van.

Based upon undisputed facts, defendant, at a minimum,
had arguable probable cause to arrest plaintiff, and therefore
is entitled to qualified immunity. Defendant was arrested for
and charged with, *inter alia*, unlawful possession of marijuana
and criminal possession of marijuana in the fifth degree. (ECF
No. 50-1, Compl. Rep at 1; ECF No. 50-2, Arrest Rep. at 1; ECF
No. 59, Crim. Ct. Compl. at 3.) Under New York law, a person is
guilty of unlawful possession of marijuana when he "knowingly
and unlawfully possess [marijuana]," N.Y. Penal Law § 221.05,
and is guilty of criminal possession of marijuana in the fifth
degree when he "knowingly and unlawfully possesses . . . a
controlled substance with intent to sell it," *id.* § 220.06(1).
The question thus is whether it was objectively reasonable for
defendant to believe, or if reasonable officers could disagree
as to whether there was probable cause to believe, that
plaintiff knowingly and unlawfully possessed marijuana.

In *Garcia v. New York Police Investigator Aguiar*, the
court found that defendant officers were entitled to qualified

immunity with respect to false arrest and false imprisonment claims where there was no dispute that the officers smelled marijuana in a car and inquired as to who owned the marijuana but did not receive an answer.  138 F. Supp. 2d 298, 300, 304-05 (N.D.N.Y. 2001).  Based upon those facts, the court found that "reasonable officers could disagree whether there was probable cause to believe one or more of the vehicle's occupants possessed marihuana and to search [the driver] therefor."  *Id.* at 304.

Similarly, here, it is undisputed that defendant smelled marijuana emanating from the van over which plaintiff had dominion and control.  In the context of Fourth Amendment search and seizure, an individual with keys to and permission to exercise control of a car has "complete dominion and control" of the vehicle.  *United States v. Ochs*, 595 F.2d 1247, 1253 (2d Cir. 1979) (finding criminal defendant with keys to and permission from owner to use a car had standing to challenge a search of that vehicle), *cert. denied,* 444 U.S. 955 (1979).  It is undisputed that plaintiff had keys to the van, informed defendant that the van did not belong to him[7] but that he was going to move it anyway, and used a key to open the driver's

---

[7] For the purposes of defendant's motion for summary judgment, he accepts plaintiff's version of the events insofar as plaintiff "went down a nearby driveway/alleyway that led to several residential homes to get the key to the van from a man named Glen who lived there."  (ECF No. 49, Def. 56.1 Statement ¶ 5; *see also* ECF No. 52, Pl. Responsive 56.1 Statement ¶ 5.)

side door of the van.[8]  (ECF No. 57-1, Jt. Dep. Append. at 7, 17,

20, 72, 74; ECF No. 49, Def. 56.1 Statement ¶ 21; ECF No. 52,

Pl. Responsive 56.1 Statement ¶ 21.)  Thus, although plaintiff

was not driving the van, defendant reasonably believed plaintiff

nonetheless exercised control over it when plaintiff told the

officer that he had the van keys and was going to drive it, and

then opened the door to the van.  Moreover, it is undisputed

that defendant smelled marijuana when plaintiff opened the van

door.[9]  (*Compare* ECF No. 52, Pl. Responsive 56.1 Statement ¶ 21,

*with* ECF No. 49, Def. 56.1 Statement ¶ 21.)

---

[8] In his deposition and a responsive statement of facts, plaintiff admitted to opening the van door.  (ECF No. 57-1, Jt. Dep. Append. at 17; *compare* ECF No. 49, Def. 56.1 Statement of Facts ¶ 21, *with* ECF No. 52, Pl. Responsive 56.1 Statement ¶ 21.)  His subsequent statement that he "steadfastly denied ever opening any door to the van" cannot serve to create a genuine dispute of fact.  (ECF No. 53, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp'n to Def. Mot."), filed 6/12/2017, at 10.)  *See Kennedy v. City of New York*, 570 F. App'x 83, 84 (2d Cir. 2014) (summary order) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony." (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996))).

[9] "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion[.]"  Fed. R. Civ. P. 56(e)(2).  Rule 56(c) provides, *inter alia*, that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Plaintiff's statement that "[defendant] may, or may not have, smelled marijuana coming from inside the van at some point" does not satisfy this requirement as it does not cite to evidence in the record or demonstrate that defendant cannot produce admissible evidence to support that fact.  (*See* ECF No. 53, Pl. Opp'n to Def. Mot. at 15.)  Indeed, defendant has presented undisputed admissible evidence that he smelled marijuana emanating from the van when plaintiff opened the door.  Accordingly, the court finds it undisputed that defendant smelled marijuana when plaintiff opened the van door.

Courts have disagreed regarding whether the odor of marijuana alone is sufficient to establish probable cause under New York law. *Compare People v. Robinson*, 959 N.Y.S.2d 188, 189 (N.Y. App. Div. 2013) ("When the police asked [the driver] to roll down the windows, they detected an odor of marijuana. This was sufficient, by itself, to provide probable cause to arrest [the driver] and search the car." (citations omitted)), *and Fowler v. City of New York*, 67 N.Y.S.3d 171 (N.Y. App. Div. 2017) ("The odor of marijuana emanating from the vehicle, in and of itself, provided probable cause to arrest [the driver and passengers] and search the vehicle." (citing *Robinson*, 959 N.Y.S.2d 188)), *with Sherman v. Holt*, No. 6:12-cv-292, 2013 WL 6506475, at *5 (N.D.N.Y. Dec. 12, 2013) (finding that "detection of the odor of marijuana would not provide probable cause to arrest plaintiff," who was sitting in the driver's seat of a parked car, "for possession of that drug . . . without some other evidence that someone had been smoking marijuana in the car." (citing, *inter alia*, Wayne R. LaFave, *2 Search & Seizure: A Treatise on the Fourth Amendment*, § 3.6(b) & n.44 (5th ed. 2012))). Based upon these facts, reasonable officers could disagree whether there was probable cause to arrest plaintiff. *See Garcia*, 138 F. Supp. 2d at 304-05.

Because defendant had at least arguable probable cause to arrest plaintiff, defendant is entitled to qualified immunity and his motion for partial summary judgment is granted.

## III.  Denial of Fair Trial

Plaintiff argues that summary judgment is appropriate regarding his denial of fair trial claim because defendant admitted to mistakenly reporting the location of the underlying incident and arrest and because defendant falsely reported that "he observed plaintiff operating a vehicle, exiting the vehicle, engaging in hand to hand sales, and then re-entering the vehicle."  (ECF No. 44, Plaintiff's Memorandum of Law in Support of his Motion for Summary Judgment ("Pl. Mem. in Support of Summary Judgment"), filed 6/12/2017, at 9.)  Defendant denies falsely reporting such information.  (ECF No. 42, Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Mem. Opp'n to Pl. Mot."), filed 6/12/2017, at 3.) Defendant argues that, at most, only the non-material fact of the location of the incident and arrest could be considered fabricated.  (*Id.* at 4.)

To establish a denial of fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a

deprivation of liberty as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted); *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order) (citing, *inter alia*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). "A plaintiff need not have been tried or convicted to assert a fair trial claim, as the constitutional violation occurs when the false information is transmitted to prosecutors." *Nnodimele v. Derienzo*, No. 13-cv-3461, 2016 WL 337751, at *11 (E.D.N.Y. Jan. 27, 2016) (citing *Ricciuti*, 124 F.3d at 127, 130). Unlike a false arrest claim, "probable cause is no defense to a denial of the right to a fair trial claim[.]" *Garnett*, 838 F.3d at 278 (citing *Ricciuti*, 124 F.3d at 130). Additionally, because "fabrication of evidence violate[s] a 'clearly established constitutional right,' " police "officers are not entitled to qualified immunity." *Id.* at 276 (alteration omitted) (quoting *Ricciuti*, 124 F.3d at 130).

For the purpose of a denial of right to fair trial, a police officer qualifies as an investigating official. *Loftin v. City of New York*, No. 15-cv-5656, 2017 WL 3614437, at *8 (E.D.N.Y. Aug. 21, 2017) (citing *Garnett*, 838 F.3d at 274; *Ricciuti*, 124 F.3d at 130). To establish that evidence has been fabricated, "[a] plaintiff need only produce some evidence showing that the officer's statement or evidence is false or

manipulated." *Id.* (citing *Garnett*, 838 F.3d at 269-70, 279;
*Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015); *Jocks v.
Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003)). Fabricated
evidence likely to influence a jury's verdict includes that
which was material to the prosecutor's case. *See Garnett*, 838
F.2d at 277 (explaining fabricated evidence is material when it
may affect "the prosecutor's decision to pursue charges rather
than to dismiss the complaint without further action" or could
influence "the prosecutor's . . . assessments of the strength of
the case"); *Ricciuti*, 124 F.3d at 129-30 (finding fabricated
evidence which allegedly formed the basis of prosecutorial
charging decisions was material). A plaintiff can establish
that the investigating official forwarded the allegedly
fabricated evidence to a prosecutor with either direct evidence
or indirect evidence from which it can be inferred that the
evidence was forwarded. *See Morse*, 804 F.3d at 547.

Finally, deprivation of liberty may be established
through pre-arraignment detention, the number of post-
arraignment court appearances, constraints such as bail
conditions, a period of incarceration, and/or travel
restrictions. *Singer*, 63 F.3d at 117; *Arbuckle v. City of New
York*, No. 14-cv-10248, 2016 WL 5793741, at *10-11 (S.D.N.Y.
Sept. 30, 2016); *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208,
216 (2d Cir. 2000). "To satisfy the final, causation element, a

plaintiff must prove that the fabricated evidence forwarded to the prosecutor proximately caused his deprivation." *Harris v. City of New York*, No. 15-cv-8456, 2017 WL 6501912, at *8 (S.D.N.Y. Dec. 15, 2017) (citing *Poventud v. City of New York*, 750 F.3d 121, 158-59 (2d Cir. 2014)). A plaintiff's acceptance of an ACD does not foreclose that plaintiff's ability to establish a claim for denial of right to a fair trial. *Apostol v. City of New York*, No. 11-cv-3851, 2014 WL 1271201, at *5 (E.D.N.Y. Mar. 26, 2014) ("[C]ourts in this Circuit . . . have ruled that a plaintiff's accepting an ACD does not preclude a fair trial claim."); *Keller v. Sobolewski*, No. 10-cv-5198, 2012 WL 4863228, at *4 (E.D.N.Y. Oct. 12, 2012) ("[N]o precedent exists, in this circuit or otherwise, for dismissing a § 1983 claim for deprivation of the right to a fair trial in light of a plaintiff's acceptance of an ACD.").

Plaintiff's claim that defendant "concedes[] his allegations were false in every regard" is unfounded. (*See* ECF No. 44, Pl. Mem. in Support of Summary Judgment at 12.) When considering plaintiff's summary judgment motion, the court must view the evidence in the light most favorable to defendant and, here, the court finds that defendant has admitted only to forwarding the prosecutor incorrect information regarding the location of the arrest and its underlying events. (ECF No. 42, Def. Mem. Opp'n to Pl. Mot. at 4; ECF No. 57-1, Jt. Dep. Append.

at 42, 87-88, 95-96.)  With respect to whether defendant witnessed plaintiff driving, entering, or exiting the van, defendant has not admitted to fabrication.  Rather, plaintiff appears to deliberately confuse defendant's inability to remember specific details of the events leading up to the arrest nearly four years after the fact with alleged lies fabricated at the time of the arrest.  (*See* ECF No. 57-1, Jt. Dep. Append. at 45-46, 59-60.)  Defendant's less than perfect memory may impair his credibility before a jury, but it does not establish that he forwarded entirely fabricated information to the KCDA.  Moreover, defendant's credibility is not a matter for the court to decide.  *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict.").

Additionally, plaintiff claims defendant provided the KCDA with fabricated evidence of plaintiff's statement of ownership regarding the van.  (ECF No. 44, Pl. Mem. in Support of Summary Judgment at 11-12.)  Specifically, plaintiff claims that defendant forwarded paperwork indicating plaintiff asserted ownership of the van, but later, in his deposition, testified that plaintiff asserted that his sister owned the van.  (*Id.*)  However, the cited paperwork includes the same contradictory

statements.  The paperwork notes that an officer "approached [Jones] and asked [Jones] if the van belonged to [him], [and Jones] stated yes."  (ECF No. 50-4, Compl. Rm. Screening Sheet at 1.)  A few lines down, the document reads, "van released to [Jones's] sister—true owner."  (*Id.*)  Farther down on the same page, it reads, "[Jones] states in sum and substance, that is not my vehicle."  (*Id.*)  Defendant's seemingly contradictory statements therefore do not establish that he forwarded fabricated evidence to the KCDA.

Thus, the only indisputably incorrect information defendant provided to the KCDA was the location of the arrest and its underlying events.  This erroneous information would not likely affect a jury's decision and, as such, is not material.  Accordingly, plaintiff's motion for partial summary judgment is denied.

**CONCLUSION**

For the reasons stated above, plaintiff's motion for partial summary judgment is DENIED and defendant's motion for partial summary judgment is GRANTED.  Accordingly, plaintiff's request to schedule an inquest on damages is also denied.  The court strongly urges the parties to pursue settlement and directs the parties to file a joint letter with the court within seven days of this Memorandum and Order stating how they intend to proceed.

**SO ORDERED.**

Dated:     March 30, 2018              _____/s/_____
           Brooklyn, New York      **HON. KIYO A. MATSUMOTO**
                                   United States District Judge